UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE ZELLERINO,

        Plaintiff,                        Case Number 14-12715
                                                       Honorable David M. Lawson

v.

ANDREW ROOSEN, and SALEM SHUBASH
d/b/a ARMORED INVESTMENT GROUP,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS, DISMISSING DISCOVERY
MOTIONS AS MOOT, AND DISMISSING COMPLAINT WITHOUT PREJUDICE**

Plaintiff Janice Zellerino has brought a class action lawsuit against defendants Andrew Roosen and Salem Shubash under the Fair Credit Reporting Act (FCRA). She alleges that the defendants impermissibly obtained her consumer report — and the reports of thousands of other people — through a company called Amored Investment Group for the sole purpose of soliciting debt relief services for their other companies. The defendants filed a motion for judgment on the pleadings and summary judgment, arguing, among other things, that the Court lacks personal jurisdiction. The plaintiff opposed the defendants' motion, arguing that the Court had personal jurisdiction because the defendants' actions impacted the plaintiff in Michigan. The Court heard oral argument on the motion on June 19, 2015. At the hearing, the Court noted that neither party had addressed the Supreme Court's decision of *Walden v. Fiore*, --- U.S. ---, 134 S Ct. 1115 (2014), which this Court believed had a significant bearing on the question of personal jurisdiction in this case. The Court took the motion under advisement and permitted the parties to submit supplemental briefs addressing the case. Both parties have done so. After reviewing their submissions, the Court

believes it must dismiss the case for lack of personal jurisdiction over the named defendants. Therefore, the case will be dismissed without prejudice.

I.

Plaintiff Janice Zellerino is a Michigan citizen. According to the plaintiff's complaint and the parties' motion papers, defendants Andrew Roosen and Salem Shubash operate a common law partnership called Amored [not "Armored"] Investment Group. The plaintiff alleges in conclusory style that Roosen and Shubash are "doing business in Michigan," but there are no facts to back up those allegations, and the plaintiff says that their business office is located at 9241 Irvine Boulevard, Irvine, California.

The plaintiff alleges that the defendants' partnership exists only to obtain consumer reports for use by the defendants' other businesses, which include Armored Financial Solutions, Armored Financial Services, Inc., Armored Investment Group, Armored Debt Center, Armored Home Loans, and LHDR or Legal Helpers Debt Resolution, all of which operate from the single office in Irvine, California.

The plaintiff alleges that the defendants unlawfully accessed her consumer report on March 21, 2012 while acting under the false trade name of Amored Investment Group. The entry on her credit report reads "PRM-Amored Investment Group" and the address for the company is listed as the Irvine Boulevard address. The plaintiff contends that the defendants did not have any permissible purpose to access her credit report and instead sought her credit information for the purpose of soliciting debt relief services for their other companies. The plaintiff alleges that the defendants falsely certified to Equifax or its agents that they would use the reports for permissible purposes only, they did not have a permissible purpose to access the report, and the plaintiff has

suffered damages as a result, namely an invasion of privacy. The complaint alleges that the defendants have also obtained the credit reports of thousands of other people.

On July 11, 2014, the plaintiff filed a putative class-action lawsuit against the defendants for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* Zellerino seeks to represent "all persons within the United States whose identities in the records of Equifax as being the subject of consumer reports obtained by Amored Investment Group within the five years preceding the filing of the complaint."

On April 21, 2015, the defendants filed a motion for a judgment on the pleadings and for summary judgment. They argue that (1) the plaintiff makes no allegation of any injuries that caused her damages or alleged any improper use of any information that the defendants accessed; (2) the plaintiff cannot pierce the corporate veil and hold the defendants liable for any alleged wrongdoing; (3) the plaintiff's class definition is fatally defective because it does not define a class that has been subject to wrongdoing by the defendants, references "Amored Investment Group" but not defendants Roosen and Shubash, and the statute of limitations for bringing a claim is two years, but the plaintiff proposes a five year period for inclusion in the class; and (4) the plaintiff cannot establish personal jurisdiction over the defendants.

The first three arguments have no merit. The summary judgment aspect of the motion is premature. The plaintiff has not had an opportunity for meaningful discovery, and she has shown the need for such discovery through her affidavit under Federal Rule of Civil Procedure 56(d). The plaintiff's complaint states a plausible claim under the FCRA, since she is not required to establish an injury because the FCRA provides for statutory damages and the plaintiff has pleaded a plausible claim against the defendants in their individual capacities. And the plaintiff's proposed class

definition appropriately includes those who may be entitled to relief and those who may not. Moreover, the plaintiff has stated plausible claims against the defendants in their personal capacities, and the possibility that some class members may have differing statute of limitations periods does not defeat the proposed class definition.

The fourth argument — addressing personal jurisdiction over the defendants — presents the plaintiff with some difficulties, especially in the wake of several recent decisions on the subject by the Supreme Court.

II.

The defendants' motion is styled as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). However, they challenge personal jurisdiction, which calls into play Federal Rule of Civil Procedure 12(b)(2).

In a motion to dismiss for want of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendants. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). However,

> [w]here, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In that instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Id*. at 1459.

*Air Prods. & Controls, Inc. v. Safetech Int'l., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen*, 282 F.3d at 887 (citations omitted).

A court may exercise its adjudicatory power over a party based on general personal jurisdiction or specific personal jurisdiction. *Indah v. U.S. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011). General jurisdiction allows a plaintiff to sue a defendant "on any and all claims against it, wherever in the world the claims may arise." *Daimler AG v. Bauman*, --- U.S. ---, 134 S. Ct. 746, 751 (2014). General jurisdiction exists if a defendant's contacts with a State "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ---, 131 S. Ct. 2846, 2851 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). The plaintiff does not suggest that general jurisdiction exists in Michigan over Roosen or Shubash.

Specific jurisdiction allows a plaintiff to sue a defendant only for claims that arise out of the defendant's activities in the forum state. *Ibid.* A defendant is subject to specific jurisdiction "if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"" *Ibid.* (quoting *International Shoe*, 326 U.S. at 316); *see also J. McIntyre Mach., Ltd. v. Nicastro*, --- U.S. ---, 131 S. Ct. 2780, 2788 (2011) (recognizing that "contact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum'") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). To satisfy this standard, the defendant must have, among other things, "'purposefully avail[ed] itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear Dunlop Tires*, 131 S. Ct. at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The plaintiff argues that the Court may exercise specific jurisdiction because the defendants committed an intentional tort that caused consequences to occur in the State of Michigan. Although this case involves federal law, the FCRA does not contain a specific rule for personal jurisdiction. The Court therefore must look to Michigan law for the governing rules. *See Daimler AG*, 134 S. Ct. at 753 (noting that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). "Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional Due Process requirements, and thus, the two questions become one." *Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F. 2d 1174, 1176 (6th Cir. 1992)). The Court therefore must determine whether the exercise of jurisdiction complies with the limits imposed by the Due Process Clause. *See Daimler AG*, 134 S. Ct. at 753.

The plaintiff relies on *Meyers v. Bennet Law Offices*, 238 F.3d 1068 (9th Cir. 2001), to argue that a court may exercise jurisdiction over a defendant based on the effects of his or her conduct. In *Meyers*, the Ninth Circuit reversed a district court order of dismissal for want of personal jurisdiction in an FCRA case. The Nevada plaintiffs alleged that the defendant obtained their credit report for an unlawful purpose through a company in Utah. The defendant did not have any contacts with Nevada except for the fact that the plaintiffs resided there. Nevertheless, the court of appeals held that the district court in Nevada could exercise personal jurisdiction over the defendant, because

the injury occurred in Nevada where the injured party resided, not in Utah where the defendant unlawfully accessed the credit report. That is so, the court reasoned, because the injury in a FCRA case is an invasion of privacy and could "only be felt where [the] Plaintiffs' 'sensibilities' reside." *Id.* at 1074 (citations omitted).

*Meyers*, in turn, relied on *Calder v. Jones*, 465 U.S. 783, 791 (1984), which suggested that a court may exercise jurisdiction over a defendant based on the "effects" of his or her intentional acts on a plaintiff. In *Calder*, a California actress brought a libel suit in California against a reporter and an editor from the National Enquirer, a Florida-based company. The plaintiff's libel claims were based on an article that the defendants wrote and edited in Florida for the magazine. The Court, focusing on "'the relationship among the defendant, the forum, and the litigation,'" held that the lower court properly exercised jurisdiction. *Id.* at 788 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). The Court noted that California was "the focal point both of the story and of the harm suffered," because the story was drawn from California sources, concerned the California activities of a California resident, and questioned the professionalism of a California actress whose television career was centered in that state. *Id.* at 788-89. "Jurisdiction over petitioners," the Court concluded, "is therefore proper in California based on the 'effects' of their Florida conduct in California," effects that were both intended and foreseeable. *Id.* at 789.

However, the rule in *Meyers* (and its interpretation of *Calder*) — that specific jurisdiction exists over a defendant in a forum solely because the effects of his intentional act are felt there — cannot be reconciled with the Supreme Court's latest decision on the point in *Walden v. Fiore*, --- U.S. ---, 134 S Ct. 1115 (2014). *Cf. Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("[A]fter *Walden*[,] there can be no doubt that 'the

-7-

plaintiff cannot be the only link between the defendant and the forum.' Any decision that implies otherwise can no longer be considered authoritative.") (citations omitted); *see also Maxitrate Tratamento Termico E Controles v. Super Systems, Inc.*, --- F. App'x ---, 2015 WL 3407370, at *3 (6th Cir. May 28, 2015) ("*Walden* forecloses [any] theory of personal jurisdiction" based on the argument that jurisdiction is proper where a plaintiff felt the effects of a defendant's actions).

In *Walden*, the plaintiffs, two airline passengers, brought a civil rights action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), against a Drug Enforcement Administration agent in their home state of Nevada after the agent seized their funds at the airport in Atlanta, Georgia. The Supreme Court held that the Nevada court lacked personal jurisdiction over the agent, despite his knowledge that the plaintiffs were Nevada residents, because none of his activities took place in Nevada. The Court emphasized that the "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126. Instead, the relevant contacts are those that center on the relationship among the defendant, the forum, and the litigation. The analysis does not change, the Court held, when intentional torts are involved, even if it was foreseeable that the plaintiff would be harmed.

The Court emphasized two points about the types of contacts that are necessary to establish jurisdiction. *First*, the relationship between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). A plaintiff's contacts with the forum, however extensive, are not decisive in the jurisdictional analysis. *Ibid. Second*, the "'minimum contacts' analysis [must] look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Ibid.* Rather than assessing a plaintiff's contacts with a forum State,

the *defendant's* conduct must form the necessary connection with the forum state that is the basis for its jurisdiction over him.

Applying those principles here, it is apparent that the defendants' conduct of accessing the plaintiff's credit report, which presumably took place in California, cannot furnish a basis for them to be sued in a Michigan court, even though the plaintiff felt the impact of that privacy breach in Michigan. None of the defendants' challenged conduct had anything to do with Michigan itself. The plaintiff does not allege that any of the defendants' alleged actions took place in Michigan. Instead, the complaint alleges that the defendants, California residents, obtained the plaintiff's consumer report from Equifax, a Georgia-based company, and falsely certified that the report was for a lawful purpose.

The plaintiff argues that the Court may exercise jurisdiction because the defendants' actions harmed a Michigan resident. But *Walden* makes clear that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125. To find otherwise would "improperly attribute[] [the] plaintiff's forum connections to the defendant[s] and make[] those connections 'decisive' in the jurisdictional analysis." *Id.* at 1125. Meaningful contacts may exist in California or Georgia, but they do not exist here.

*Walden* does not undermine the Court's prior decision in *Calder v. Jones*; it merely refines it. Intentional acts may furnish the requisite "minimum contacts" with a forum, if the defendant intends to injure the plaintiff *there*. In *Calder*, for instance, the defendant purposefully reached into the forum state (California) to defame the plaintiff in the place where she lived and worked. In

*Walden*, the defendant did not intend to injure the plaintiff in Nevada; the fact that the injury was felt there was pure happenstance.

Apparently recognizing this subtle distinction, in her supplemental brief, the plaintiff changes her focus to the defendants' conduct and argues that the defendants accessed her credit report in order to market services for their business to the plaintiff in Michigan. The plaintiff contends that these allegations sufficiently allege that the defendants engaged in routine and systematic marketing activity, which included efforts to solicit the business of the plaintiff in Michigan, and therefore the defendants have exploited this forum in order to solicit debt collection services in Michigan.

The plaintiff's new theory — that the Court has personal jurisdiction over the defendants because they *intended* to make contact with Michigan after obtaining her consumer report — does not satisfy the basic requirements of the Due Process Clause. The plaintiff's new evidence may help the merits of her case because it suggests that the defendants obtained her credit report for marketing purposes. She notes, for example, that the defendants' subscriber agreement with Equifax indicates that they sought access to Equifax's database to engage in "direct mail" marketing. Direct marketing is not a permissible reason to access a person's credit report under the FCRA. *See* 15 U.S.C. §1681b(a). However, the plaintiff does not allege in her papers that the defendants actually engaged in marketing activities in the State of Michigan. Nor does it appear that she could do so plausibly.

Personal jurisdiction cannot be based on the intent to make contact with the forum some time in the future. The Court must evaluate personal jurisdiction based on the contacts that the defendant has already made. Hypothetical contacts do not suffice. *Cf. Max Daetwyler Corp. v. R. Meyer*, 762

F.2d 290, 300 (3rd Cir. 1985) ("To hold that Uddeholm's intermittent sales of Meyer blades evidences continuous distributive activity, capable and certain of repetition, is to allow the mere possibility of future contact to support jurisdiction. We do not believe such hypothetical contacts can ground jurisdiction."). The plaintiff has not alleged that the defendants marketed debt relief services to the plaintiff, only that they intended to do so. The Court therefore does not have jurisdiction over the defendants because the plaintiff has not established that the defendants have any contacts with the State or any relationship with the forum.

III.

Because the plaintiff has not shown in its papers that the defendants can be sued in this forum consistent with due process, the Court must dismiss the case against them.

Accordingly, it is **ORDERED** that the defendants' motion for judgment on the pleadings [dkt. #20] is **GRANTED IN PART**. The Court has no personal jurisdiction over the defendants. The motion is **DENIED** in all other respects.

It is further **ORDERED** that the complaint is **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the pending motions relating to discovery [dkt. #22, 24, 29, 33, 46, 47] are **DISMISSED as moot**.

                                                  s/David M. Lawson  
                                                  DAVID M. LAWSON  
                                                  United States District Judge

Dated: July 29, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 29, 2015.

                                              s/Susan Pinkowski
                                              SUSAN PINKOWSKI